[Civ. No. 28764. Second Dist., Div. Four. July 30, 1965.]

Estate of HOWARD M. ANDERSON, Deceased. ALAN CRANSTON, as State Controller, etc., Plaintiff and Appellant, v. DOROTHY R. ANDERSON et al., Defendants and Respondents.

Charles J. Barry, Walter H. Miller and Myron Siedorf for Plaintiff and Appellant.

Bewley, Knoop, Lassleben & Whelan, and William M. Lassleben, Jr., for Defendants and Respondents.

KINGSLEY, J.—The sole issue in this case is whether or not the proceeds of certain life insurance policies on the life of decedent are subject to the $50,000 exclusion provided by section 13724 of the Revenue and Taxation Code. The trial court held that they were and fixed the inheritance tax in the estate accordingly. The Controller has appealed. We conclude that the trial court was correct and sustain its order.

On April 3, 1961, decedent executed his last will and testament, which will, in paragraph Fourth, created a trust, with his wife (respondent Dorothy R. Anderson) and respondent Bank of America as cotrustees. Thereafter he took out the

two insurance policies herein in question, which provided for cash proceeds in the total amount of $31,000. The policies were made payable to ''Bank of America Trust Department, as stipulated in my Will, dated 1961.'' Decedent died July 11, 1963. On January 28, 1964, the court in which the will was being probated made an order appointing respondents as trustees of the testamentary trust created under the provisions of the will and authorizing them to collect the proceeds of the two policies and to hold ''the proceeds of life insurance so collected, on the terms and conditions of said testamentary trust.'' When the inheritance tax appraiser's report was filed, it included the $31,000 so received as part of the taxable estate, resulting in a tax of $1,193.49. Objections were filed, a hearing was held, resulting in findings (hereinafter discussed), a holding that the $50,000 exclusion was available, and an order redetermining the tax at $788.33. The Controller appealed.

The evidence at the hearing was to the effect that the executors of the estate, acting as such, had demanded payment of the policies and that they had been refused; that thereafter the proceedings for the appointment of testamentary trustees, above referred to, had been taken; and that the proceeds of the policies had been paid by the insurance company in reliance on such order. The trial court, in addition to the provisions of its original order, above quoted, directing that the policy proceeds be held ''on the terms of'' the testamentary trust, made specific findings in the order appealed from (1) that the proceeds of the policies were not payable to the executors of the estate; and (2) that ''None of the insurance proceeds have been listed in the inventory and appraisement of the decedent's probate estate. None of the proceeds of insurance have been used for payment of claims of creditors or for expenses of administration. The proceeds of insurance are to be disregarded in the computation of the estate administered upon for the purposes of determining statutory attorneys' fees and Executors' commissions. . . . The proceeds of insurance collected by the Trustees are not usable for the benefit of the decedent's estate, nor may they be used by the Trustees to meet taxes, charges, debts or expenses legally enforceable against the decedent's estate.''

This case, apparently of first impression in this state, involves the application to these agreed facts of sections 13722, 13723, and 13724 of the Revenue and Taxation Code. These three sections read as follows:

Section 13722. "The transfer of the proceeds of any insurance policy payable to the estate, executor of the will, administrator of the estate, or personal representative of the insured, or to a trustee who receives the insurance proceeds to the extent that the proceeds are used for the benefit of the estate, is a transfer subject to this part."

Section 13723. "Except to the extent specified in Section 13724, the payment or right to receive payment of the proceeds of either of the following insurance policies is a transfer subject to this part:

"(a) Any insurance policy issued after June 25, 1935, which is payable to a named beneficiary.

"(b) Any insurance policy issued on or before June 25, 1935, which is payable to a named beneficiary and under which the insured has the right to change the beneficiary or has the right of cash surrender."

Section 13724. "In addition to the exemptions allowed by this part, the payment or right to receive payment of fifty thousand dollars ($50,000) of the proceeds of either of the insurance policies mentioned in Section 13723 is not subject to this part, with the following limitations:

"(a) Where there is more than one policy, whether of the same or a different type, only fifty thousand dollars ($50,000) of the aggregate proceeds is not subject to this part.

"(b) Where there is more than one beneficiary, the fifty thousand dollars ($50,000) shall be prorated among the beneficiaries in proportion to the amount of insurance payable to each."

I

It is clear that a literal reading of section 13722 places these policies outside of its scope—they are not payable to the estate or a personal representative and .the proceeds are not to be used, and have not been used, by a trustee "for the benefit of the estate." However, unless the proceeds were payable to the trustee of a valid *inter vivos* trust, they would not be payable to a "named beneficiary" as required by section 13723 and the proceeds would fall into the estate by operation of law, and, for that reason, become subject to section 13722.

II

However, we conclude that the proceeds of the policies

were the subject of a valid *inter vivos* trust and, therefore, within section 13723 (and, thus, entitled to the $50,000 exclusion under section 13724). The Controller has cited us to two cases—one from Ohio (*In re Estate of Rothenbuecher* (1945) 76 Ohio App. 425 [64 N.E.2d 680]), and one from Pennsylvania (*In re Myers' Estate* (1933) 309 Pa. 581 [164 A. 611]), and to other authorities, holding that an insurance policy payable to a trust to be created in a will thereafter executed is purely testamentary in character. With this there can be no disagreement; nor do we doubt that the same result follows where the policy merely refers, as in the *Myers* case, to "my will," since the obvious reference is to whatever will may ultimately be admitted to probate. But, as is pointed out in another Pennsylvania case (*In re Hemingway's Estate* (1959) 395 Pa. 651 [151 A.2d 472-473]), a different result follows where—as in the case at bench—the reference is to a will already executed and specifically referred to. The court said, in the latter case: "In the instant case the direction refers to settlor's will dated October 15, 1954. The telltale is the date, which makes the will a mere memorandum. Without the date, as in Myers, the reference is perforce to an ambulatory will and the testamentary apparatus that it represents. With the date, as at bar, no amount of later wills would alter the character of the particular will of October 15th as an identifiable memorandum to which attention was directed by the settlor, as if by shorthand, for determination of who should take, and how, under the trust. The dated will could as effectively have been any other aide-memoire."

The Controller now suggests that, since the reference was only to the year of execution, there might have been some other will executed in 1961. The point borders on the frivolous; no such suggestion was made in the trial court, and the proceedings in that court, as above outlined, are tantamount to a holding that the will of April 3, 1961, probated below, was the document incorporated by reference into the insurance policies before us.

 Of more serious import is the argument that, since the trust res—the insurance proceeds—did not come into the hands of the trustee until after the death of decedent, there was no valid trust during his lifetime and that the whole arrangement was therefore testamentary. The accepted doctrine is to the contrary, the general rule being that the designation of the trustee as immediate beneficiary of the policy is

all that is required. (Scott on Trusts (2d ed.) § 84.1; Rest.2d Trusts, § 57, com. f and § 84, com. b.)

In *Fahrney* v. *Wilson* (1960) 180 Cal.App.2d 694 [4 Cal. Rptr. 670], the court dealt with an alleged oral trust of the proceeds of an insurance policy. The chief problem in the case was the sufficiency of the evidence to sustain a finding that the insured had created a trust on the terms alleged. Before turning to that problem, the court (at pp. 696-697) said, of the alleged trust: ''There can be no question that a trust such as the one found by the trial court in this case may be created. As stated in section 84 of the Restatement of Trusts 2d:

'' 'An interest which is subject to be divested, if transferable, can be held in trust.

'' . . . . . . . . . . . .

'' 'If a person takes out a policy of insurance upon his life payable to a third person, the rights of the third person as beneficiary of the policy can be held in trust, even though the insured reserves power to change the beneficiary of the policy. The trust may be created either by the insured or by the beneficiary of the policy. Thus, a trust is created whether the beneficiary of the policy is designated as trustee in the policy, or whether the policy is payable to him without mention of any trust but he agrees with the insured to hold the policy or its proceeds in trust for a designated person, or whether the beneficiary of the policy declares himself trustee of his rights under the policy. The beneficiary of a policy of life insurance has more than a mere expectancy (see § 86), even though his rights under the policy may be terminated by the exercise by the insured of a reserved power to change the beneficiary.

'' 'Such a trust is not testamentary. See sec. 57, comment f.'

''This rule obtains in California.''

A hearing in the Supreme Court was denied.

We can discover no other California case touching on this problem. The Controller refers us to *Monell* v. *College of Physicians & Surgeons* (1961) 198 Cal.App.2d 38 [17 Cal. Rptr. 744]. But that case did not deal with a life insurance trust but with an alleged oral trust of a bank account—a situation which traditionally has received a different treatment in trust law, as the sections of the Restatement of Trusts quoted in *Monell* clearly show.

■ In view of the square holding in *Fahrney*, we conclude that we deal here with a valid, *inter vivos*, trust of the policy and its proceeds, with the terms of the trust clearly established by the trustor, in his lifetime, by a written instrument incorporated by reference into the insurance policy. The statutory exemption is available.

In view of our conclusion that we do not here deal with a testamentary trust, it is unnecessary for us to consider the arguments in the briefs directed to the effect, if any, of the 1959 proposals to amend the law as to testamentary trusts.

### III

■ From what we have already said, it is apparent that the order of January 28, 1964, above discussed, authorizing respondents to receive and hold the insurance proceeds, was legally unnecessary and that respondent bank was entitled to receive the proceeds of the policies from the insurance company, as the named beneficiary, without any court proceedings. However, the fact that, in order to satisfy the doubts of the insurance company and to expedite receipt of the policy proceeds without lengthy judicial proceedings, the device of an order of the probate court was resorted to does not affect the taxability of those proceeds. Neither the court, the respondents, nor the insurance company, could affect the legal rights to those proceeds; the respondents hold them as agents for, and on behalf of, the rightful trustee of the insurance trust—namely the bank acting alone.

The situation is by no means novel. In other cases, policy proceeds have been paid to persons who were, contemporaneously, representatives of the estate of the insured. In all such cases, the courts have disregarded the fact of a technically improper payment and receipt, and have dealt with the proceeds as if payment had properly been made. The cases are collected in Note, 73 American Law Reports, Second Edition, 178, where the rule is summarized as follows: ". . . the fact that a death benefit is paid to an executor or administrator does not make it subject to the succession tax as a part of the estate of the decedent where the estate was not entitled to the payment, and the representative received it as a matter of convenience for the true beneficiaries."

We assume that, in further administration of the case in the trial court, it will see that its testamentary trustees (validly appointed as to estate assets subject to the trust provisions of the will) divest themselves of the monies herein involved in

favor of the single trustee designated by the decedent in the policies.

The order herein appealed from is affirmed.

Jefferson, J., concurred.

Files, P. J., deeming himself disqualified, did not participate.