[Crim. No. 1279.  First Appellate District, Division Two.—December 18, 1925.]

# THE PEOPLE, Respondent, v. JAMES HAWTHORNE, Appellant.

[1] CRIMINAL LAW—ROBBERY—IDENTIFICATION—EVIDENCE — CROSS-EXAMINATION.—In this prosecution for robbery, the trial court did not err in refusing to permit the cross-examination of a witness regarding an alleged conversation between such witness and a detective concerning the identity of the defendant, where the prosecution did not introduce evidence of any conversation held by those persons, and where, in cross-examining the witness and another witness, who had testified as to defendant's identity, the defense did not ask either one if his identification was based solely on his recollection of the appearance of the robber.

[2] ID. — PAYMENT OF REWARD — OBJECTION TO EVIDENCE. — In such prosecution, the trial court properly sustained an objection to a question propounded by the defense to a detective, who was a witness for the prosecution, if such witness had received any money from an insurance company arising as a result of police activities in the robbery.

[3] ID.—ARGUMENT—READING CASES RELATING TO MISTAKEN IDENTITY — COMMENT OF TRIAL COURT — EVIDENCE. — In such prosecution, where defendant's counsel, in arguing the case to the jury, started to read about certain cases in which the witnesses had made mistakes in identifying defendants, to which the prosecution objected claiming that counsel should confine their arguments to matters within the record, the use by the trial court, in ruling upon said objection, of such expressions as "confine yourself to the record," "to the facts proved in the case," "to inferences from the facts proven," did not have the effect of a holding by the trial court that the facts testified to by the witnesses for the prosecution conclusively proved those facts, and was not an usurpation of the functions of the jury.

[4] ID.—LIMITING ARGUMENT—READING FROM BOOKS AND PAPERS NOT IN EVIDENCE—ABSENCE OF ERROR.—In such prosecution, the trial court did not err in limiting the argument of counsel for defendant in his attempt to read from books and papers some of the facts regarding alleged mistakes in identification, where there was no evidence in the record regarding the other cases to which counsel was referring, and there was no error in a ruling of the trial

---

1.  See 27 Cal. Jur. 98.
3.  See 8 Cal. Jur. 250.
4.  See 8 Cal. Jur. 271.

court that the argument should be confined to the evidence that had been introduced.

[5] ID.—INSTRUCTIONS—PRESUMPTION OF INNOCENCE—FAILURE TO RE-QUEST ADDITIONAL INSTRUCTIONS.—In such prosecution, where the trial court instructed the jury that in every criminal proceeding the defendant is presumed ·to be innocent until the contrary is proven, and in case of reasonable doubt as to whether his guilt has been satisfactorily shown he is entitled to an acquittal, the failure of the trial court to give other and additional instructions on that general subject did not constitute error, where it was not shown that defendant tendered such additional instructions and that the trial court refused to give them, or that the given instruction is not a sound statement of the law.

[6] ID.—FAILURE OF DEFENDANT TO TESTIFY—COMMENT BY JUROR—ABSENCE OF MISCONDUCT.—In such prosecution, a comment made by a juror, during the argument of defendant's counsel to the jury, concerning the failure of defendant to show his whereabouts at the time of the perpetration of the alleged robbery, did not constitute such misconduct· as to justify a reversal where, after being reproved by the trial court, the juror apologized and the court admonished the jury to disregard the remark of the juror for any purpose, and where it was apparent that the juror was wholly inexperienced as such and entirely uninformed on those parts of the law of this state which place the burden of proof on the prosecution and not the defense and which leave to a defendant to take the stand in his own behalf or omit to do so, as he sees fit, and that no inference is to be drawn by the jurors because the defendant remains silent.

---

(1) 40 Cyc., p. 2501, n. 94, p. 2507, n. 16.   (2) 16 C. J., p. 867, n. 27.   (3) 16 C. J., p. 830, n. 47.   (4) 16 C. J., p. 895, n. 75 New. (5) 16 C. J., p. 1059, n. 42.   (6) 16 C. J., p. 828, n. 22 New, p. 1161, n. 29.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Michael J. Roche, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clarence M. Booth for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

---

5.   See 8 Cal. Jur. 314.

STURTEVANT, J.—The appellant was convicted of the crime of robbery. He made a motion for a new trial and the motion was denied. He has appealed from the judgment of conviction and the order denying his motion for a new trial.

Mr. McLean, called as a witness by the prosecution, testified that he is a clerk employed with Houston-Gilmore & Company and at the time of the trial had been so employed for six and a half years. His employers' place of business is located on the northeast corner of the intersection of Post and Stockton Streets in San Francisco. On the morning of the 24th of June, 1924, the witness went to his place of business a little after 9 o'clock. As he walked up to the door from Stockton Street he noticed two men standing around the corner in Post Street. As the witness walked up to put his key in the door he turned around to see if the men were interested in him. They evidently were not because they were reading a paper. As the witness walked in the door he was forced in from behind and when he turned around there was a gun held on him by one of the men and who was afterward designated by the witness as No. 1. That individual ordered the witness to go back to the vault and give him the goods. The witness told him that he did not have the combination and could not. Two men followed the witness into the store and the second man the witness designated as No. 2. The witness thereupon proceeded to delineate all of the facts of the robbery. He stated that neither of the robbers was masked and he delineated what No. 1 did and what No. 2 did. He also stated that when the three mentioned were in the store a little later Mr. Gilmore, one of the proprietors, arrived. The witness continued to state the story as to what transpired after Mr. Gilmore came in. In giving his testimony the witness mentioned several occasions in which he looked at each of the robbers squarely in the face and also had other views of each of those men. Continuing his story, the witness stated that later it transpired that No. 1 was William O'Connor and still later, on October 22, 1924, the witness again saw No. 2 in bed at the San Francisco Hospital, and recognized him, and thereafter heard that his name was James Hawthorne. During his examination the witness fully delineated the facts of the rob-

bery. Later Mr. Gilmore was called as a witness and testi-
fied to all the facts as he remembered them. Among other
things, he testified to seeing O'Connor at a later date and
that O'Connor had pleaded guilty and was serving his time.
Furthermore, Mr. Gilmore testified that on the 22d of Oc-
tober at the same time and place above mentioned he saw
the appellant and was later informed as to his name. The
prosecution called one other witness, Francis X. Latulipe.
That witness testified that he is a detective sergeant of the
police department detailed in charge of the police photo-
graph gallery and as draftsman for the police department.
He produced a drawing which he had made of the store
which had been robbed. That witness did not purport to
give testimony on any other subject.

[1] The first point made by the appellant is that the
trial court erred in not permitting cross-examination of the
witness Gilmore and not allowing a certain examination of
the witness Bohr, who was called by the defense. There
was testimony in the record that Detective Fred Bohr took
Mr. McLean and Mr. Gilmore to the hospital. The prosecu-
tion did not introduce any conversation held by those per-
sons. In cross-examining the witness McLean and the wit-
ness Gilmore the defense did not ask either one if his
identification was based solely on his recollection of the
appearance of the robber. Neither did the defense ask
either of the witnesses if any other person had made any
statement to the witness on which the witness in part rested
his testimony as to identification. Nevertheless, the defense
propounded to Mr. Gilmore these questions: "Did Fred
Bohr tell you why he was taking you out there? Did Mr.
Bohr talk to you on the way out about what you should do
when you got there? As a matter of fact, Mr. Gilmore,
didn't Mr. Fred Bohr tell you at that time that there was
a man out there named Hawthorne who was dying, and that
he wanted you to go out and identify him before he died?"
The prosecution objected to each question, the objection was
sustained, and it is these rulings that the appellant attacks
in the first division of the point under discussion. We
think there was no error in any one of the rulings and, fur-
thermore, that the questions were not the proper subject
matter of cross-examination of the witness Gilmore. [2]
After the prosecution had closed its case the defense called

Detective Bohr and propounded to him the question, ''Mr. Bohr, have you received, or did you in the month of December, 1924, receive any money from an insurance company called Lloyd's, arising as a result of police activities in this robbery?'' The prosecution objected to the question and the objection was sustained. Under the facts above recited the ruling was clearly correct.

[3] The second point made by the appellant is that the trial court erred in commenting on the evidence in the presence of the jury. In presenting this point some short excerpts are quoted. In arguing the case to the jury one of the attorneys for the appellant started to read about certain cases in which the witnesses had made mistakes in identifying defendants. The prosecution objected and claimed that counsel should confine their arguments to the matters that were within the record that was before the court. The record shows clearly the contention of the prosecution, the contention of the defense and that the trial court was ruling on that contention and nothing more. However, in ruling, the trial court used different expressions, such as ''confine yourself to the record,'' ''to the facts proved in this case,'' ''to inferences from the facts proven.'' The appellant argues that the language used by the trial court was in effect to hold that the facts testified to by the witnesses for the prosecution conclusively proved those facts and that the trial court thus usurped the functions of a jury. Taking the context from which the excerpts are quoted, we think it is quite clear indeed that no one present at the trial then thought the trial court was usurping the functions of the jury. Moreover, if either counsel had called the attention of the trial judge to some of the phrases used no doubt the matter would have been stricken out or modified on the spot.

[4] In the next place, the appellant contends that the trial court erred in limiting the argument of the appellant's counsel. This point reverts to the attempt of the defense to read from books and papers some of the facts regarding alleged mistakes in identification. There was no evidence of course, in the record regarding the other cases to which counsel was referring and there was no error in the trial court holding that the argument should be confined to the evidence that had been introduced.

[5] The trial court instructed the jury, among other things, as follows: "In every criminal proceeding under our system of criminal jurisprudence, the defendant is presumed to be innocent until the contrary is proven, and in case of reasonable doubt whether his guilt has been satisfactorily shown he is entitled to an acquittal." We do not understand the appellant to contend that said instruction is not a sound statement of the law, but that he complains that the court did not give other and additional instructions on that general subject. However, it is not claimed that the defendant tendered such additional instructions and that the trial court refused to give the same. Under these circumstances the trial court committed no error.

[6] The last point made by the appellant involves the proceedings had when Mr. Cunha, as counsel for the appellant, was arguing the case to the jury. The point is novel. For that reason we state the record in full as it appears in the transcript:

"Mr. Cunha (Continuing). . . . There is nothing here to show that Mr. Hawthorne was ever even in San Francisco at that time.

"A Juror: Where was he then?

"The Court: Just a moment, lady. The case has been submitted to you on the facts. You have no right at this time to interfere with the course of this trial. You remain silent and retire to the jury-room at the proper time.

"Mr. Cunha: I think, if your Honor please, it is important now, on the part of the defendant, for us to request your Honor to advise the other jurors to entirely disregard that question propounded to me by the juror in the jury-box.

"The Juror: I apologize.

"The Court: The juror has apologized.

"Mr. Cunha: An invasion of the rights of the defendant, and prejudicial conduct, and I request your Honor to specifically instruct the other jurors to disregard that incident.

"The Court: Let the remark of the juror be disregarded for any purpose at this time, ladies and gentlemen of the jury. Proceed.

"Mr. Cunha: I am very glad, my dear friends, that that question was asked, for this reason—I take it I will proceed

away from that, from the proposition of the question, because that has to be disregarded altogether.

"The Court: Yes.

"Mr. Cunha: But I will proceed with my argument in this manner: The situation might be made, in a general sense, as to where Mr. Hawthorne was upon the day in question, if he wasn't at the scene of the robbery. Now, if that be the fact, and there is some doubt in somebody's mind as to where he was, or someone feels that there should be some proof as to where Mr. Hawthorne was, let me say this to you, that the burden of clearing up any situation of that kind is upon the prosecution in this case and not upon the defense. There is no burden or obligation upon the defendant—I think, if your Honor please, we better wait until—

"The Court: What is it?

"Mr. Cunha: Until the ladies—

"The Court: Let us proceed. The time is getting short.

"The Juror: I apologized. I can't do anything more.

"Mr. Stafford: It was just an innocent mistake.

"Mr. Cunha: Oh, I realize that.

"The Juror: But I would tell just where I was.

"The Court: Now, keep in mind, ladies and gentlemen—

"Mr. Cunha: I think a continuance—

"The Court: —that we are here at this trial. I trust there will be no more outbursts of this kind. I understand that emotion sometimes gets away from one, but we should refrain from any flights at this time. The jury will retire at the proper time and deliberate upon their verdict.

"Mr. Cunha: I ask your Honor to specifically instruct the jury to disregard that last remark of the juror also. There was another remark just made.

"The Court: What remark?

"Mr. Cunha: I ask the jury be specifically instructed to disregard it. I don't know what it was. Some remark.

"The Court: It has no place here. Proceed."

Looking directly at this incident in the very face of it, it appears at once that the juror was wholly inexperienced as such and that she was entirely uninformed on those parts of the law of this state which place the burden of proof on the prosecution and not on the defense; and which leave to a defendant to take the stand as a witness in his own be-

half or omit to do so, as he sees fit, and that no inference is to be drawn by the jurors because the defendant remains silent. These matters were no act of the trial court and consequently no possible error on the part of the trial court. The juror said nothing constituting misconduct, but, on the other hand, did all that she could do under the circumstances, namely, she apologized when it appeared that her question or statement, as the case might be, was ruled as being irregular. If there is any real criticism to be made it is a criticism of the law-making power which rendered the incident possible and not an error on the part of the court or any official acting thereunder.

The judgment and order are affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 14, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 15, 1926.